KAYE, &c.
*vs.*
HALL, &c.

---

## Kaye, &c. *vs.* Hall, &c.

### ERROR TO LOUISVILLE CHANCERY COURT.

Judge MARSHALL delivered the opinion of the court.

PET. EQ.

Case 27.

January 6.

1. The provisions in the charter of the city of Louisville of 1831 and of 1851, prohibiting the laying out of streets or alleys without the consent of the mayor and council, is for the benefit of the city, and not for the benefit of those who do open streets and alleys through their property, and invite the public use thereof. And the city authorities may take notice of them as public thoroughfares, and doing so, previous consent to their being opened will be presumed.

2. The charter of the city of Louisville requires that the improvements upon streets and alleys shall not be charged upon the adjacent property holders, unless sanctioned by a vote of two thirds of the general council, evidenced by the ayes and nays taken on the adoption of the ordinance. This requisition is imperative, and cannot be dispensed with. If the improvements be made without such sanction, the city, and not the property holders, is liable.

This petition in equity was filed in November, 1851, by Hall, as assignee, to enforce against Frederick A. and William Kaye, owners of lots binding on a twenty foot alley, running from sixth to seventh street, south of Broadway, in the city of Louisville, a lien for payment of the apportionment or assessment made upon their lots for grading and paving said alley so far as it binds on them, which was done

Case stated.

under an ordinance of the general council of said city. The Kayes appear to have been the former proprietors of the square through which the alley passes; but whether they had owned the soil of the alley jointly, or to which of them it had belonged, does not certainly appear. They resist the claim on the ground, first, that the alley is a private and not a public one, therefore not the property of the city nor under the jurisdiction of the city council, nor subject to its order for grading and paving it, at the expense of the lot owners; and secondly, on the ground that if this be a public alley, the two boards of the city council have not proceeded according to the charter in passing and authenticating the ordinance for its improvement, and consequently that the lot owners are not bound to pay for it, and there is no lien upon their lots. The city having been made a defendant by amended petition, maintains in her answer that the alley in question is a public alley, &c., and that it has been recognized, known, and used as such since 1837. And she exhibits three deeds from Frederick A. Kaye and one from William Kaye, made in 1837 and 1838, each of which conveys a lot binding on this alley, and calls for it as a boundary; and the two earliest of which being from F. A. Kaye contain express covenants that it shall be kept open and free forever. There is nothing in these deeds to indicate that this alley was intended for mere private use by those who might own the lots binding upon it; and as soon as by the enclosure of the adjacent lots, it became distinguishable as a space of twenty feet in width, designedly left open from the street on one side of the square to the parallel street on the other, in the form of a street or alley, it assumed, in fact, (whatever it might have been in law,) the character of a thoroughfare, admitting and inviting the use of all persons who might choose to use it for the passage of themselves or their property from the one street to the other. The alley has, in fact, been defined for some years past, by fences enclosing the adjacent

lots and by a rope walk extending for some distance along one side of it. This rope walk seems to be occupied by a lessee, (presumably of the Kayes, or one of them,) and from his representation made to the city council, in aid of the petition of one lot owner on the alley, for having it graded and paved, it appears that hemp is brought to his rope walk through this alley; that in consequence of its condition wagons loaded with hemp have been overset in it, and that water stands in it, and in warm weather becomes offensive. Here then are the deeds of the Kayes calling for this alley, conveying lots binding upon it and receiving, as may be assumed, an enhanced price for the convenience to be derived from it. And these deeds, *prima facie*, appropriated the alley to the use of the grantees for all the purposes to which it could be applied as an alley for their advantage, including its use by the public. And even if by consent of the grantors and grantees the square might have been wholly inclosed in the first instance, there has not been and cannot now be such consent. For all have concurred in leaving the alley as an open and defined thoroughfare, offered openly for public use; one of them has petitioned for its improvement as a public alley of the city; the Kayes themselves, or one of them, seem to have erected a building upon it and leased it for a business to which the use of the alley is convenient and appropriate; it is, in fact, used as a common thoroughfare, and its condition required that it should be so improved as to render it suitable for public use, and prevent its being a nuisance injurious to the health of the city. The legitimate conclusion from the facts seems to be that it was dedicated as a public alley in fact, which ought to be subject to the jurisdiction of the city council and to be improved under their authority and direction like other streets and alleys of the city.

The charter of 1831, it is true, says that no person shall have a right or power to lay out a street or alley within the city of Louisville without having first

KAYE, &c.
vs.
HALL, &c.

ville of 1831
and of 1851,
prohibiting the
laying out of
streets or alleys
without the
consent of the
mayor and
council, is for
the benefit of
the city, and
not for the ben-
efit of those
who do open
streets and al-
leys through
their property,
and invite the
public use
thereof. And
the city author-
ities may take
notice of them
as public thor-
oughfares, and
doing so, previ-
ous consent to
their being o-
pened will be
presumed.

obtained the consent of the mayor and councilmen; and a similar prohibition is contained in the charter of 1851. But this prohibition is made for the benefit of the city and not of the proprietor, who, without the required consent, does, in fact, lay out an alley through his square, and selling lots binding upon it, thus obtains the advantage of an alley in his sales, and in conjunction with his vendees makes an alley in fact, inviting the public use, and which is used by the public. And we are opinion that after the proprietor has thus done all that he can do to make it a public alley, it is not for him, but for the city, to determine whether she will take jurisdiction over it as a public alley; and that her subsequent consent, evidenced by her actual assumption of such jurisdiction, is equivalent to a previous authority. Indeed we doubt whether, under all the facts stated, the city council was not bound to take the alley in charge, under their duty to have the streets and alleys put and kept in proper repair, and to provide for the health of the city.

In answer to the second ground of resistance relied on by the Kayes, the city insists that the requirements of the charter were pursued, and that the proceedings under which this alley was graded and paved by order of the general council were valid, and were such as bound the lot owners to pay for the improvement in front of their lots, and to give to the contractors who performed the work a lien therefor under the charter. And she, as well as the other parties, filed extracts from the record of the proceedings of the two boards (of aldermen and common council,) constituting the general council of the city of Louisville. Several objections are made to these proceedings in the answer of the Kayes, and in the argument of their counsel in this court. We deem it necessary, however, to notice one only, founded upon the second section of the charter of 1851.

That section, after authorizing the general council to procure the improvement of streets and alleys

at the cost of the owner of the ground fronting the improvement, adds "it is provided, however, that when any such improvement has not been petitioned for by the owners of a majority of feet of ground in front of said improvement, it shall require the concurrence of two-thirds of the members elected, in office, of each board of the general council, to pass the ordinance to procure said improvement, and the final vote thereon shall be taken by yeas and nays, and recorded in the journal of the proceedings of each board of said council." The objection is, that the record of the proceedings in the common council does not show that the yeas and nays were taken on the adoption of the ordinance now in question; does not contain the names of those who voted for or against it, and does not even state that it was passed by a vote of two-thirds of the members elected, nor indeed of those present. The decree assumes that the ordinance was, in fact, passed by a vote of two-thirds, and pronouncing the provision as to the yeas and nays to be directory only, decides that the omission to enter them upon the record did not vitiate the ordinance, and decrees the enforcement of the lien for the value of the improvement as apportioned against the Kayes. We do not concur in the opinion on which this decree is founded. The charter intends not only that there shall be a vote of two-thirds in the case provided for, but that the record shall contain the evidence of it, not merely by stating the fact, which is not done in this case, but by showing the votes themselves. And looking to the former decisions which had been made upon the requisition in the charters of Lexington and Louisville, that there should be a unanimous vote, and the presumption which had been indulged that the required unanimity had taken place, though not stated in the record, we infer that the requisition in the new charter of Louisville, that there shall not only be a vote of two-thirds, but that it shall be evidenced by the yeas and nays entered on the record, was intended to remove all

KAYE, &c.
vs.
HALL, &c.

2. The charter of the city of Louisville requires that the improvements upon streets and alleys shall not be charged upon the adjacent property holders, unless sanctioned by a vote of two thirds of the general council, evidenced by the ayes and nays taken on the adoption of the ordinance. This requisition is imperative, and cannot be dispensed with. If the improvements be made without such sanction, the city, and not the property holders, is liable.

ground of uncertainty and presumption, and to make the record of the yeas and nays the essential and exclusive evidence of the requisite majority having voted for an ordinance of this character. And we do not feel authorized to relax any check placed by the legislature upon the exercise of a power so absolute, and often so oppressive, and always so liable to abuse, as that conferred by this section.

The consequence of this conclusion is, that the ordinance in question was not valid for the purpose of charging the lot owners with the cost of this improvement, or to create a lien upon their lots for payment thereof; and as the Kayes have not made themselves responsible in any other mode, it follows, according to the case of *The City of Louisville* v. *Hyatt,* 5 *B. Mon.* 199, that the city having caused the work to be done, and having failed to secure the liability of the lot owners therefor, as the undertaker had a right to expect, she is alone liable to make compensation for it.

Wherefore the decree is reversed, and the cause remanded with directions to render a decree in favor of the complainant against the city for the amounts apportioned against the Kayes for the cost of the said improvement, fronting their lots on the alley, with interest thereon from the filing of the amended bill making the city a defendant.

*Pilcher* and *Hauser*, for plaintiffs; *Speed & Worthington*, for defendants.